IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| RICHARD BLAISDELL, #A0200813, | ) ) | CIV. NO. 14-00433 JMS/RLP |
|---|---|---|
| | ) | ORDER (1) DENYING MOTION FOR |
| Plaintiff, | ) | TEMPORARY RESTRAINING |
| | ) | ORDER OR PRELIMINARY |
| vs. | ) | INJUNCTION AND (2) DISMISSING |
| | ) | COMPLAINT |
| DEP'T OF PUBLIC SAFETY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER (1) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION AND (2) DISMISSING COMPLAINT

Plaintiff Richard Blaisdell, a prisoner proceeding in forma pauperis and pro se, commenced this prisoner civil rights action on September 24, 2014, by submitting the instant Motion for a Temporary Restraining Order ("TRO") or Preliminary Injunction ("Motion").[1] Mot., Doc. No. 1. Blaisdell complains that prison officials at the Halawa Correctional Facility ("HCF") opened, inspected, and allegedly read fifteen letters sent to him from the Hawaii state courts, the Hawaii Paroling Authority ("HPA"), the Hawaii Attorney General's Office, and Honolulu Reporting Services. Blaisdell alleges this violated his unspecified constitutional

---

[1] At the October 8, 2014 status conference, the parties agreed that the court should also construe the Motion as a Complaint (filed on October 8, 2014) and Motion. *See* Doc. No. 11.

rights to have his legal mail opened and inspected in his presence.  He seeks immediate injunctive relief enjoining this practice.

Defendant Hawaii Department of Public Safety ("DPS") filed an Opposition to Blaisdell's Motion.  Doc. No. 8.  Thereafter, the court held a status conference on October 8, 2014; Blaisdell appeared by telephone and Deputy Attorney General Renee R. Sonobe Hong appeared on behalf of Defendant.  Blaisdell filed his Reply on October 24, 2014.  Doc. No. 13.  After consideration of the Motion, Opposition, Reply, and the parties' declarations and statements at the status conference, the court elects to decide this matter without a hearing pursuant to LR7.2(d) and LR99.16.2(a) of the Local Rules for the District of Hawaii and Rule 78(b) of the Federal Rules of Civil Procedure.  For the following reasons, Blaisdell's Motion for Temporary Restraining Order or Preliminary Injunction is DENIED and the Complaint and action are DISMISSED for failure to state a claim.

## I. THE PARTIES' ARGUMENTS

### A. Blaisdell's Position

Blaisdell alleges that HCF mail room personnel opened and inspected fifteen separate pieces of his confidential "legal mail" outside of his presence beginning on July 2, 2014.  Blaisdell Decl., Doc. No. 1. *Id.*, PageID #1.  He

concludes that, because he has civil suits pending against DPS and state officials, these unidentified prison personnel have, "of course, read" this mail. *Id.* The mail at issue includes eight letters from the Circuit Court of the First Circuit, State of Hawaii ("First Circuit Court"), three from First Circuit Court Judge Rhonda A. Nishimura, one from the HPA, two from the Hawaii Attorney General's Office, and one from Honolulu Reporting Services.[2] *See id.*, PageID #3-7.

Blaisdell repeatedly refers to exhibits in the Motion and in his Reply. He does not, however, produce the fifteen envelopes, the documents within, or describe their contents in his Motion or Reply, although he was directed to do so at the October 8, 2014 status conference. Blaisdell submits one document titled "Mail Procedures," that was attached to his opened envelopes. *See* Pl.'s Ex. A, Doc. No. 1-1. This document states, "Mail from government officials, attorney of record, and the courts are [sic] considered Legal Mail." *Id.* It further explains that to be considered confidential legal mail, the envelope must be marked "LEGAL MAIL" above the inmate's name and address, and must contain the agency's or attorney's return address (and attorney Bar number). *See id.* Blaisdell argues that because HCF Mail Room staff attached this document to his opened mail, they clearly recognized they were opening legal mail. He also asserts that any mail

---

[2] Honolulu Reporting Services is a court and secretarial reporting services business.

from a court or government agency must be considered legal mail, relying on the Sixth Circuit's opinion in *Sallier v. Brooks*, 343 F.3d 868, 877 (6th Cir. 2003) .

Blaisdell claims that prior to July 2, 2014, HCF personnel delivered mail from the courts, government agencies, and attorneys unopened, regardless of whether it complied with these directions or was marked confidential or as legal mail. *See* Mot., Blaisdell Decl., Doc. No. 1, PageID #8. He argues that HCF's revised legal mail policy is an exaggerated response to an incident that occurred on June 13, 2014, when HCF staff discovered contraband inside another inmate's legal mail, which had the inmate's attorney's return address. *See* Reply, Doc. No. 13, PageID #100. Blaisdell argues that HCF officials violated his constitutional rights, state and federal laws, and DPS policy by opening his mail outside his presence, and asserts they required a warrant and probable cause before opening this mail outside his presence.

**B.  Defendant DPS' Opposition**

DPS states that inmate mail is delivered from the United States Postal Service in bulk daily to HCF, excluding weekends and holidays. Leatumauga Decl., Doc. No. 8-1, PageID #50 ¶ 3. Inmate mail is then separated into two categories in the mail room: (1) regular, unmarked mail; and (2) mail that is clearly labeled "LEGAL MAIL" on the delivery address above the inmate's name,

includes the attorney's or agency's full name on the return address, and, if from an attorney of record, the attorney's Bar number. *Id.*, PageID #51 ¶ 5. Mail from government agencies, officials, attorneys of record, and the courts that complies with this directive is considered "legal mail," and is forwarded to the inmate's housing unit, where it is opened and inspected for contraband in the inmate's presence. *Id.* ¶ 4. If it does not comply, it is opened in the mail room, inspected for contraband, and delivered to the inmate with a copy of HCF's "Mail Procedures" to notify the inmate of the change in procedures. *Id.*, PageID #52 ¶ 7; *see also* Pl.'s Ex. A, Doc. No. 1-1.

DPS concedes that, before June 25, 2014, mail from government agencies, officials, attorneys of record, and the courts was routinely forwarded unopened to an inmate's housing unit and opened in front of the inmate. Effective June 25, 2014, however, prison officials began opening all mail that did not comply with the prison's mail policies, regardless of its origin, "to enhance security and to further limit and prevent the smuggling of contraband into the facility." *Id.*, PageID #53 ¶ 8.

DPS argues that Blaisdell's mail did not comply with DPS' mail procedures because it was not marked as "legal mail," and therefore, was not entitled to the protective procedures accorded legal mail. Defendants also argue

that the mail at issue here, from the First Circuit Court, HPA, Hawaii Attorney General's Office, and Honolulu Reporting Services, does not constitute legal mail under federal law.

## II.  **LEGAL STANDARDS**

The standard for issuing a temporary restraining order is identical to that for issuing a preliminary injunction.  *See, e.g.*, *Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*) (citation omitted)) (emphasis in *Mazurek*); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("A preliminary injunction is an extraordinary remedy never awarded as a matter of right.").

///

///

> A plaintiff seeking a preliminary injunction must show:
>
> [1] that he is likely to succeed on the merits,
>
> [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
>
> [3] that the balance of equities tips in his favor, and
>
> [4] that an injunction is in the public interest.

*Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 20). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' -- a lesser showing than likelihood of success on the merits -- then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Id.* at 1291 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (emphasis added by *Shell Offshore*)). "The elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072. Regardless of which standard applies, the movant always "has the burden of proof on each element of the test." *Maloney v. Ryan*, 2013 WL 3945921, at *3 (D. Ariz. July 31, 2013); *see Nance v. Miser*, 2012 WL 6674404, at *1 (D. Ariz. Dec. 20, 2012) (citing *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000), citing in turn, *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,

634 F.2d 1197, 1203 (9th Cir. 1980)).

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoners seeking preliminary injunctive relief against prison officials. Injunctive "relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Section 3626(a)(2) limits the courts' power to grant preliminary injunctive relief to inmates; "no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### III. **DISCUSSION**

**A.** **Constitutional Standards For Inmate Mail**

Prisoners retain a First Amendment right to send and receive mail in a manner consistent with legitimate penological objectives. *See Shaw v. Murphy*, 532 U.S. 223, 231 (2001); *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). An inmate's right to send and receive mail "is subject to 'substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional

8

security.'" *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005); *Morrison v. Hall*, 261 F.3d 896, 901 (9th Cir. 2001); *Prison Legal News v. Cook*, 238 F.3d 1145, 1150 (9th Cir. 2001). Prison officials may, therefore, examine an inmate's mail without infringing his rights, *United States v. Wilson*, 447 F.2d 1, 8 n.4 (9th Cir. 1971), and inspect non-legal mail for contraband outside the inmate's presence. *Witherow*, 52 F.3d at 265-66 (upholding inspection of outgoing mail); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail).

> *Wolff v. McDonnell*, 418 U.S. 539 (1974) explains:
>
> We think it entirely appropriate that the State require . . . communications [from an attorney to an inmate] be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Id.* at 576-77. Prison officials may therefore institute procedures for inspecting "legal mail," *e.g.*, mail sent between attorneys and prisoners, *id.* (incoming mail from attorneys), and mail sent from prisoners *to* the courts, *see Royse v. Superior Court*, 779 F.2d 573, 574-75 (9th Cir. 1986) (outgoing mail to court). Opening

9

and inspecting legal mail outside the presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to petition the government, however. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014). Reading such mail, even in the inmate's presence, as opposed to simply inspecting it, may infringe an inmate's Sixth Amendment right to counsel in a criminal case. *Id.* at 910-11; *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996).

Within the Ninth Circuit, "mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996); *Hayes v. Radford*, --- Fed. Appx. ----, 2014 WL 4100663, at *1 (9th Cir. Aug. 21, 2014) (citing *Keenan* and affirming summary judgment on this issue). The rule may be different in the Sixth Circuit. *See Sallier*, 343 F.3d at 875-76 ("[W]e can imagine a situation in which a court corresponds with a prisoner before filing the prisoner's complaint because some administrative requirement, such as submitting an in forma pauperis affidavit, paying the filing fee, or signing the complaint, has not been met. In that situation, the complaint is not yet a public record, and prison officials have no legitimate penological interest in reading the correspondence before it is.") (citations omitted).

Similarly, mail to and from state agencies is not "legal mail," and may be opened and inspected outside an inmate's presence. *O'Keefe*, 82 F.3d at 325-27

(holding that inspection of grievance mailings to state agencies did not violate First Amendment); *Grigsby v. Horel*, 341 Fed. Appx. 314, 314-15 (9th Cir. 2009); *Jenkins v. Huntley*, 235 Fed. Appx. 374, 376 (7th Cir. 2007) (letter from Illinois Attorney Registration and Disciplinary Commission was not legal mail where inmate was not represented or seeking representation by the Commission); *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005) (mail from Department of Justice, nonprofit civil liberties organization, and other legally oriented entities is not legal mail when inmate was not represented by or seeking representation by attorney with sending organization); *Sallier*, 343 F.3d at 875-76 (finding mail from the American Bar Association, various county clerks, and a register of deeds did not implicate inmate's First Amendment legal mail rights).

**B.     DPS Policies and Procedures For Handling Inmate Mail**

The DPS' Policy and Procedures Manual (PPM) states in pertinent part:

> .5     Privileged mail shall be subject only to inspection for contraband *in the presence of the inmate*. Privileged mail shall not be subject to censorship, unless there is sufficient cause to believe mail is in fact private or threatening under the pretext of legal mail. In such cases, reason for censorship will be documented and authorized by the facility Warden or his designee.

> .6 In order for mail to be considered privileged, it must be contained in a letterhead or official envelope, which is, marked "confidential" and which also bears the signature and typed or printed name of the correspondents. All mail from attorneys shall also bear the attorney's bar number.
>
> Each inmate may correspond via privileged mail with the following:
> (1) Courts of the State of Hawaii or the United States
> (2) The inmate's previously identified personal attorney
> (3) The Hawaii State Ombudsman
> (4) The governor of the State of Hawaii
> (5) The Attorney General
> (6) The Director of the Department of Public Safety
> (7) The Corrections Division Administrator
> (8) The State of Hawaii Paroling Authority
> (9) The facility Warden
> (10) Elected state or federal officials[.]

PPM COR.15.02.4, eff. Nov. 30, 2011 (emphasis added), available at:

http://dps.hawaii.gov/wp-content/uploads/2012/10/COR.15.02.pdf. (last accessed Oct. 28, 2014).

## C. Analysis

Blaisdell unequivocally states the mail at issue here was not from a private or prospective attorney. *See* Reply, Doc. No. 13, PageID #103 ("BLAISDELL'S EXHIBITS did not contain any documents from any private attorney, period."). Blaisdell also concedes the mail at issue was not marked as confidential or "LEGAL MAIL," or gave any other indication to HCF Mail room

12

personnel that it was subject to greater protection under DPS policy, the Constitution, or state law. *See generally,* Reply, Doc. No. 13. Rather, Blaisdell argues it should be considered legal mail based solely on from whom it was sent. That is, he argues that because it came from the state and federal courts, the HPA, the Hawaii Attorney General's Office, opposing counsel, and Honolulu Reporting Services, it constitutes legal mail subject to heightened protection.

It is settled within the Ninth Circuit that mail from a court to a prisoner, particularly mail that is not marked confidential, is not legal mail. *See Keenan*, 83 F.3d at 1094 (citing *Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); *Hayes*, 2014 WL 4100663, at *1. *Keenan* found that such mail was subject to inspection outside the plaintiff's presence because it was publicly available. 83 F.3d at 1094 (declining to decide "whether mail clearly sent from a lawyer to an inmate but lacking the 'Legal Mail' designation may be opened outside the presence of the inmate"). Blaisdell conceded at the status conference that the mail he allegedly received from Judge Nishimura were rulings and court orders, not personal confidential correspondence. Blaisdell also suggests that mail from the undersigned in this case has been opened. *See* Reply, Doc. No. 13, PageID #103, #106, #107. The only correspondence Blaisdell has received in this case from the District of Hawaii has been from the Clerk of Court containing court orders or

other routine court mailings.  Clearly, mail to Blaisdell from the First Circuit Court or the District of Hawaii does not qualify as legal mail.  Similarly, mail from the Attorney General's Office (mail from his opposing attorney), and mail from the HPA, a state agency that is part of the DPS, is not protected legal mail.  *Cf. Keenan*, 83 F.3d at 1094.

It is immaterial that the DPS PPM defines mail from government agencies, officials, and courts as legal mail.  *See* PPM COR.15.02.4.6.  First, courts may not "grant or approve relief that binds prison administrators to do more than the constitutional minimum."  *Gilmore*, 220 F.3d at 999.  A prison may set a higher standard than that required by the First Amendment, but doing so does not elevate a violation of a prison policy into a constitutional claim.  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Second, the PPM specifically requires such mail be labeled as confidential legal mail if an inmate or sender wants it treated as such.  Defendant DPS' PPMs clearly comply with the Supreme Court's approved procedures for differentiating legal mail from non-legal mail and add no greater burden on Blaisdell's mail communication than that required in *Wolff*.

Moreover, Blaisdell's argument that HCF is required to notify courts, state agencies, and others that mail must be properly labeled confidential or LEGAL MAIL before initiating such a policy is specious.  The prison is not

responsible for notifying every court and government agency nationwide who Blaisdell may initiate contact with about HCF's mail policies. If a court or government agency intends to correspond confidentially with an inmate, they are generally aware how to do so without notice from a prison.

Finally, Blaisdell provides no explanation why mail from Honolulu Reporting Services constitutes legal mail.[3] It is not from an attorney, court, or marked as confidential legal mail. Even if it contained the transcription of a court hearing, such a transcript is a matter of public knowledge. The court discerns no basis for finding that opening this letter (1) could have had a chilling effect on Blaisdell's First Amendment right to petition the government, (2) infringed his Sixth Amendment right to counsel, or (3) violated a due process claim under the Fourteenth Amendment. *See Wolff*, 418 U.S. at 576 (finding First Amendment not violated by opening a prisoner's mail, Sixth Amendment protection applies only to attorney-client relationship in criminal settings, and Fourteenth Amendment due process rights apply only to prisoner's ability to prepare a petition or complaint).

Finally, to the extent Blaisdell argues that prison officials required a warrant and probable cause before opening his mail, he is mistaken. *See* Mot.,

---

[3] Blaisdell makes no arguments regarding his claims concerning mail from Hawaii Reporting Services or the HPA in his Reply, concentrating only on mail from the federal and state courts and the Hawaii Attorney General. *See generally*, Reply, Doc. No. 13.

Doc. No. 1, PageID #9. An inmate has no reasonable expectation of privacy in his cell and is not entitled to Fourth Amendment protection against unreasonable searches and seizures. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). This applies equally to an inmate's incoming mail. *See Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (holding pre-trial detainee has no reasonable expectation of privacy in cell; no Fourth Amendment violation when inmate not present during search of legal materials). Even if Blaisdell had a reasonable expectation of privacy, a warrantless search of his incoming mail does not violate the Fourth Amendment if there is a justifiable purpose of prison security, as is evident here. *See United States v. Vallez*, 653 F.2d 403, 406 (9th Cir. 1981), *receded from on other grounds by United States v. Goseyun*, 789 F.2d 1386, 1387 (9th Cir. 1986) (*per curiam*). The search and temporary seizure of incoming mail for contraband does not violate a prisoner's constitutional rights. *See Ransom v. Greenwood*, 288 Fed. Appx. 396, 397 (9th Cir. 2008) (affirming summary judgment against inmate who claimed that defendants' search and seizure of his mail violated Fourth Amendment).

## IV. **CONCLUSION**

Blaisdell fails to state a cognizable claim regarding the opening of his mail outside of his presence. He cannot succeed on the merits of his claims, he has

16

not and will not suffer irreparable harm from DPS' mail policy, and neither the balance of equities nor public interest justifies issuing a temporary restraining order or a preliminary injunction. The court DENIES Blaisdell's Motion for Temporary Restraining Order or Preliminary Injunction.

In light of Blaisdell's clear failure to state a claim despite a liberal construction of his Complaint, the court DISMISSES the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Blaisdell is GRANTED leave to amend the Complaint if possible, on or before **November 14, 2014**. Failure to file a cognizable amended complaint on or before **November 14, 2014** shall result in dismissal of this action with prejudice. Blaisdell is NOTIFIED that such dismissal may later count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).

///

///

///

///

///

///

///

The Clerk is DIRECTED to send Blaisdell a prisoner civil rights complaint form and instructions so that he may comply with this Order granting leave to amend.

IT IS SO ORDERED.

DATED: October 31, 2014.



    /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Blaisdell v. Dep't of Pub. Safety*, 1:14-cv-00433 JMS/RLP; tro 2014/ Blaisdell 14-433; J:\PSA Draft Ords\JMS\Blaisdell 14-433 jms (dny TRO PI).wpd